IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2021

**BRENT LANDON CARTER v. SHANNON DALE CARTER**

**Appeal from the Chancery Court for Overton County**
**No. 17-CV-35      Ronald Thurman, Chancellor**

———————————————————

**No. M2020-01704-COA-R3-CV**

———————————————————

This divorce action concerns the trial court's classification and division of the marital estate and award of alimony to the wife. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which ANDY D. BENNETT, J. and J. STEVEN STAFFORD, P.J., W.S., joined.

William A. Cameron and Bradford G. Wood, Jr., Cookeville, Tennessee, for the appellant, Brent Landon Carter.

Charlene Robin Vance, Watertown, Tennessee, for the appellee, Shannon Dale Carter.

**OPINION**
**I. BACKGROUND**

The parties, Brent Landon Carter ("Husband") and Shannon Dale Carter ("Wife"), married in September 1995. Two children were born of the marriage. Both children have since attained the age of majority.[1] Throughout the marriage, Husband maintained a 212-acre farm owned by his mother, Orlene Carter ("Grandmother"). In exchange for his efforts, Grandmother allowed the parties to live on her land.

---

[1] Husband was tasked with remitting child support in the amount of $621 per month for the youngest child until he attained the age of majority.

The parties first placed a single-wide trailer on the land for their use. They later built a small house ("the Block House"), where they resided for three years.[2] In February 2003, Grandmother deeded Husband 4.99 acres, including the land on which the Block House was built.[3] Thereafter, the parties moved to another house ("the Farmhouse") on Grandmother's property. They rented the trailer and the Block House to tenants for additional income.[4] The parties renovated the Farmhouse with funds, in part, from Wife's parents, the Smiths.[5] The Smiths also purchased furniture for the Farmhouse and provided 10 bred cows to start the parties' herd farming operation in 2002.

The marriage was contentious, at best, with the parties placing blame for the demise of the marriage on each other. Husband complained of Wife's verbal mistreatment of him, poor housekeeping skills, and lack of financial management. Wife countered with claims of Husband's overall neglect and verbal and physical assault.

Husband ultimately filed a complaint for divorce on May 12, 2017, to which Wife responded with her own counter-complaint and request for alimony. The parties agreed that irreconcilable differences justified the dissolution of the marriage, leaving the trial court to consider, inter alia, issues pertaining to the marital estate and alimony.

The trial court heard the matter over the course of three days, beginning in December 2019, with the final hearing date on October 27, 2020. At the start of the trial, Husband was 51 years old and Wife was 46 years old. Husband was employed throughout the marriage in education, first at Tennessee State and then at Tennessee Tech University. Husband has also earned a Master's Degree. His monthly gross income from his employment in 2019 was $4,437.58. He also managed various streams of revenue from cattle farming, hay baling, beekeeping, and a vending machine business.

Husband claimed that he did not net any income from his various business ventures, providing tax documents establishing that he reported a loss each year[6] and claiming that he closed the vending business in 2005. Wife submitted evidence to establish that Husband moved approximately 72 cows after she left the Farmhouse. She was able to locate some of their cattle on a nearby property and submitted photographic evidence showing Husband

---

[2] They also constructed a barn on the same parcel.

[3] Grandmother explained that she deeded each of her four sons 4.99 acres at that time.

[4] The Block House rents for $550 per month, while the trailer rents for $350 per month.

[5] Grandmother, unimpressed with the parties' efforts, declared that not much value was added to the Farmhouse through the renovation.

[6] Husband's accountant, Debra Jagnandan, confirmed Husband's claimed losses and explained that "a lot of farmers" continue in their farming efforts due to the deductions and claimed expenses available.

feeding the cattle on property owned by Thelma Bowers.[7]  Husband agreed that he had 23 cows at property owned by Ms. Bowers and 6 cows at the Farmhouse, denying Wife's claim that he possessed 72 cows.  He stated that the 6 cows at the Farmhouse were marital property because they were gifted by the Smiths, while the other 23 cows were gifted solely to him by his father in 2012.[8]

Despite Husband's claims that his cattle farming was not profitable, Wife submitted evidence to establish that he sold 35 head of cattle from May 2016 through April 2019 for approximately $24,000, with 17 head of cattle sold during the pendency of the divorce in violation of the temporary injunction.  Husband further denied ownership of several items of farming equipment that were expensed by him in his tax documents.  He was also unclear as to how many checking accounts he possessed and for what purpose.

The only real property possibly subject to equitable division was the Block House and the 4.99 acres deeded to Husband during the marriage.  Husband argued that the property remained his separate property throughout the marriage.  He initially claimed that the Block House was built by his friends without payment because "[t]hey just wanted to do something for me."  He stated that they also wanted to learn construction and practice new skills.  He later admitted that the builders expected payment and that he executed a promissory note in the amount of $35,000.  The parties also used the property to secure a mortgage, with an outstanding balance of approximately $13,000.

Wife was employed full time at Averitt Express at the time of the marriage.  She resigned for a number of years to care for the children and then pursued an education from Tennessee Tech University during the marriage.  Following her graduation, she obtained employment with the Overton County Board of Education, where she currently teaches third grade.  Her current gross yearly income is approximately $43,689.  She has outstanding student loan debt in excess of $40,000, and she testified concerning surgeries she has undergone and ongoing physical issues that may cause additional time out of work.  She further testified that she was unable to meet her monthly financial obligations as a result of medical bills, prompting her to withdraw funds early from her retirement accounts.

The parties maintained separate checking accounts throughout the marriage.  Husband asserted that he separated his finances due to Wife's overspending.  Wife claimed that Husband kept his income, including the rental and farming income, for himself and only accepted responsibility for the electricity, water, and internet bills.  He did not contribute to the care and maintenance of the children, leaving her to use her lesser funds for the children's necessaries, including daycare in the preschool years, groceries, and the

---

[7] Ms. Bowers confirmed that Husband requested access to her approximate 55 acres to house some cattle in exchange for his maintenance of the land.

[8] Wife testified in rebuttal that she recently spotted 9 new cows on the farm.

- 3 -

like. She asserted that she amassed a significant amount of credit card debt and student loans to pay for living expenses as a result of Husband's failure to contribute. She likewise provided that Husband operated the different business ventures, e.g. rentals and farming, largely with cash and would amass substantial amounts and then deposit funds as needed.

Following the separation, the Smiths purchased a residence for Wife and the children to reside and also provided furniture for their use. Wife was tasked with remitting rental payments commensurate with the mortgage in the amount of $750 per month but was frequently unable to remit payment. Husband remained in the Farmhouse, where he is not tasked with remitting payment for his residency.

Following the hearing, the trial court advised the parties that it did not find Husband's testimony credible, stating "[H]is testimony as it relates to these folks just showing up and building a house at no charge, he lost me then." The court further provided that it believed that Husband expensed more than what was permitted for tax purposes and even denied ownership of farming equipment when the evidence showed he depreciated the items for his own tax purposes in the amount of $6,000. The court found Wife's testimony credible as it related to the division of assets and request for alimony.

In so finding, as pertinent to this appeal, the court awarded the 4.99 acres and the Block House to Wife as marital property, tasking Husband with remitting payment on the outstanding mortgage balance. The court further awarded Wife alimony in futuro in the amount of $1,000 and half of her attorney's fees as alimony in solido, finding that Wife had a need and that Husband possessed income beyond what he submitted for the court's consideration. The court continued,

> The Court finds that there are great discrepancies in Husband's various income documentation submitted to this Court at trial;
>
> The Court finds that as to the cattle that [Wife's] father gave them, [Husband] has been playing hide and seek with them;
>
> The Court finds that the cattle which were housed on [property owned by Ms. Bowers] have been moved two or three times during this litigation;
>
> The Court finds as to the cattle there is proof in the record that Husband has sold numerous head of cattle throughout this litigation period and the Court does specifically find that such action by Husband was a dissipation of the marital estate;
>
> * * *
>
> That each party is hereby awarded sole ownership and rights to any vehicles

in their respective names free and clear of the other spouses;

That each party is hereby awarded sole ownership and rights to any and all other personal property in their respective names free and clear of any claim of the other spouse;

That on the retirement and investment accounts, the total of all combined accounts shall be divided equally between the parties with the amount of withdrawals made by Wife from her accounts during the marriage being charged against Wife's one-half;

That Wife is hereby awarded a judgment against Husband in the amount of [$12,686.73] representing one-half of the cattle sold by Husband at the Crossville Stockyard[.]

This timely appeal followed.

## II.  ISSUES

A.      Whether the trial court erred in its classification of the Block House as marital property.

B.      Whether the trial court erred in its division of the marital estate.

C.      Whether the trial court erred in its alimony determination.

## III.  STANDARD OF REVIEW

This action was tried by the court without a jury, so we review the trial court's findings of fact de novo upon the record with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009). We give great deference to the trial court's credibility assessments. *Id.* We do not disturb "factual findings based on witness credibility unless clear and convincing evidence supports a different finding." *Coleman Mgmt., Inc. v. Meyer*, 304 S.W.3d 340, 348 (Tenn. Ct. App. 2009). We review the trial court's conclusions of law de novo with no presumption of correctness. *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007).

# IV. DISCUSSION

## A.

Husband first claims that the court erred in its classification of the 4.99 acres and the Block House as marital property.[9]  The division of the parties' marital estate begins with the classification of the property as separate or marital property. *Miller v. Miller*, 81 S.W.3d 771, 775 (Tenn. Ct. App. 2001).  Marital property, generally, is "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]"  Tenn. Code Ann. § 36-4-121(b)(1)(A).  Separate property is defined in part as "all real and personal property owned by a spouse before marriage, including, but not limited to . . . property acquired by a spouse at any time by gift, bequest, devise or descent[.]"  Tenn. Code Ann. § 36-4-121(b)(2).

Husband points to the deed of the 4.99 acres that was gifted to him by Grandmother after the Block House was built in support of his contention that the property remained separate.  Wife responds that the property was properly classified as marital when they lived there as a family and then later used the property to generate rental income for the benefit of the family.  "[S]eparate property may be deemed marital by operation of law under theories of commingling or transmutation." *Snodgrass v. Snodgrass*, 295 S.W.3d 240, 247 (Tenn. 2009) (citing *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 747 (Tenn. 2002)).

> [S]eparate property becomes marital property [by commingling] if inextricably mingled with marital property or with the separate property of the other spouse.  If the separate property continues to be segregated or can be traced into its product, commingling does not occur. . . . [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. . . .  The rationale underlying these doctrines is that dealing with property in these ways creates a rebuttable presumption of a gift to the marital estate.

*Snodgrass*, 295 S.W.3d at 256.  This Court has recognized:

---

[9] As a threshold issue, Husband asserts that the trial court erroneously failed to itemize the parties' property with the appropriate classification and value.  Despite the length of the marriage, the parties did not amass a significant estate subject to division.  The record reflects that the trial court divided the minimal property at issue in its final order but did not provide a specific classification for each item divided.  However, we hold any error harmless when the court provided a classification for the only issue on appeal pertaining to the marital property, namely the 4.99 acres and the Block House.

Four of the most common factors courts use to determine whether real property has been transmuted from separate property to marital property are: (1) the use of the property as a marital residence; (2) the ongoing maintenance and management of the property by both parties; (3) placing the title to the property in joint ownership; and (4) using the credit of the non-owner spouse to improve the property.

*Fox v. Fox*, No. M2004-02616-COA-R3-CV, 2006 WL 2535407 at *5 (Tenn. Ct. App. Sept. 1, 2006) (internal citations omitted).

Here, the parties improved the property by constructing a house, where they lived for approximately three years during the marriage. The property was then used to generate rental income. While the parties kept their finances separate, each contributed a portion to the household through their various streams of income, including the rental income from the property at issue. The property was also encumbered by a mortgage that was paid using the rental income from the property. We do not agree with Husband that the timing of the deed transfer, after the Block House was constructed, affects the parties' treatment of the property as marital. With these considerations in mind, we affirm the court's classification of the property at issue as marital.

B.

Husband next takes issue with the court's award of the real property to Wife and the court's failure to provide him with a commensurate amount of the 4.99 acres and the Block House. The trial court has broad discretion in fashioning an equitable distribution of marital property, and an appellate court will defer to a trial court's distribution unless it is inconsistent with the statutory factors or is not supported by a preponderance of the evidence. *Baggett v. Baggett*, 422 S.W.3d 537, 543 (Tenn. Ct. App. 2013).

In all divorce cases, after classifying the parties' property, the trial court is directed to "equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just." Tenn. Code Ann. § 36-4-121(a)(1). An equitable division of marital property does not require that the property be divided equally. *Luplow v. Luplow*, 450 S.W.3d 105, 109–10 (Tenn. Ct. App. 2014) (citing *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002)). Nor does it require that each party receive a share of every item classified as marital property. *Morton v. Morton*, 182 S.W.3d 821, 833–34 (Tenn. Ct. App. 2005) (quoting *King v. King*, 986 S.W.2d 216, 219 (Tenn. Ct. App. 1998)). In making its determination, the trial court must consider statutory factors in view of the evidence presented by the parties. Tenn. Code Ann. § 36-4-121(c); *Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003).

In making an equitable division of marital property, the trial court is guided by the following relevant factors:

(1)    The duration of the marriage;

(2)    The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3)    The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4)    The relative ability of each party for future acquisitions of capital assets and income;

(5)    (A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

        (B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;

(6)    The value of the separate property of each party;

(7)    The estate of each party at the time of the marriage;

(8)    The economic circumstances of each party at the time the division of property is to become effective;

(9)    The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10)   [T]he value of an interest in a closely held business or similar asset . . . ;

(11)   The amount of social security benefits available to each spouse; and

(12) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-4-121(c). The factors are not listed in order of importance, and each is to be considered in relation to the specific facts of each case. *See Powell v. Powell*, 124 S.W.3d 100, 108 n.8 (Tenn. Ct. App. 2003).

Here, the factors weigh in support of the court's determination. This was a marriage of long duration; Husband held an advanced degree, a higher income through his regular employment, and various streams of income and assets that were not fully disclosed to the trial court; and Wife has undergone various surgeries for ongoing physical issues that could affect her ability to work in the future. Husband was evasive as to his ownership of separate property, hid cattle from Wife, and sold cattle in violation of the court's temporary injunction. Further, Husband lives in the Farmhouse without financial obligation. Based on the statutory factors and the court's broad discretion in such matters, we find no error in the court's distribution of the 4.99 acres and the Block House.

C.

Lastly, Husband takes issue with the court's awards of alimony in futuro and solido, claiming that such awards were not supported by the evidence when Wife was educated and maintained full-time employment. Trial courts have "broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). The role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220 (Tenn. 2006).

"Alimony" is defined, in pertinent part, by Black's Law Dictionary, 9th edition, as

[a] court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are divorced. Alimony is distinct from a property settlement.

Tennessee recognizes four different types of alimony: rehabilitative alimony, transitional alimony, alimony in futuro, and alimony in solido. In determining whether to award alimony, the court must first consider whether the spouse seeking alimony is economically disadvantaged. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003). "Once the trial court has found a party to be economically disadvantaged relative to his or her spouse, it must determine the nature, amount, length of term, and manner of payment of the award." *Id.* In setting the type, duration, and amount of support, courts are guided by the following list of factors:

(1)    The relative earning capacity, obligations, needs, and financial

resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2)     The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3)     The duration of the marriage;

(4)     The age and mental condition of each party;

(5)     The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6)     The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7)     The separate assets of each party, both real and personal, tangible and intangible;

(8)     The provisions made with regard to the marital property, as defined in § 36-4-121;

(9)     The standard of living of the parties established during the marriage;

(10)    The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11)    The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12)    Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).  In addition to the factors found in Tennessee Code Annotated section 36-5-121(i), the two most relevant factors in determining the amount of alimony awarded are the economically disadvantaged spouse's need and the obligor spouse's ability to pay. *Robertson v. Robertson*, 76 S.W.3d 337, 342 (Tenn. 2002). When considering these two factors, the primary consideration is the disadvantaged spouse's

need. *Watters v. Watters*, 22 S.W.3d 817, 821 (Tenn. Ct. App. 1999). "There are no hard and fast rules for spousal support decisions, and such determinations require a 'careful balancing' of the relevant factors." *Miller v. Miller*, No. M2002-02731-COA-R3-CV, 2003 WL 22938950, at *3 (Tenn. Ct. App. Dec. 10, 2003) (citing *Anderton v. Anderton*, 988 S.W.2d 675, 682–83 (Tenn. Ct. App. 1998)).

*Alimony in futuro*

Wife was awarded alimony in futuro, which is a long term form of spousal support that is typically awarded

> when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(f)(1). This type of alimony is awarded on a "long term basis or until death or remarriage of the recipient" spouse. Tenn. Code Ann. § 36-5-121(f)(1). Awards of alimony in futuro "remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances." Tenn. Code Ann. § 36-5-121(f)(2)(A); *Bowman v. Bowman*, 836 S.W.2d 563, 568 (Tenn. Ct. App. 1991).

Again, the majority of the factors weigh in favor of such an award to Wife. This was a marriage of long duration; Husband held an advanced degree, a higher income through his regular employment, and various streams of income and assets that were not fully disclosed to the trial court; and Wife has undergone various surgeries for ongoing physical issues that could affect her ability to work in the future. We find no abuse of discretion under the circumstances presented here.

*Alimony in solido*

Wife was also awarded alimony in solido, in the form of half of her attorney's fees. The decision to award (or deny) attorney fees as alimony in solido is also within the sound discretion of the trial court. *Crabtree*, 16 S.W.3d at 361; *Kincaid v. Kincaid*, 912 S.W.2d 140, 144 (Tenn. Ct. App. 1995). The appellate court will not interfere with an award, except upon a showing of an abuse of discretion, where the evidence preponderates against the award. *Long v. Long*, 957 S.W.2d 825 (Tenn. Ct. App. 1997); *Elliot v. Elliot*, 825 S.W.2d 87, 92 (Tenn. Ct. App. 1991).

An award of attorney fees in divorce cases is considered spousal support, generally characterized as alimony in solido. *Yount v. Yount*, 91 S.W.3d 777, 783 (Tenn. Ct. App. 2002). An award of such fees is subject to the same factors that must be considered in the award of any other type of alimony. *Gonsewski*, 350 S.W.3d at 113; *Yount*, 91 S.W.3d at 783. Therefore, the statutory factors listed in Tennessee Code Annotated section 36-5-101(d)(1) are to be considered in a determination of whether to award attorney fees. *Langschmidt*, 81 S.W.3d at 751.

An award of attorney fees "is conditioned upon a lack of resources to prosecute or defend a suit in good faith." *Id.* (quoting *Fox v. Fox*, 657 S.W.2d 747, 749 (Tenn. 1983)). The award of attorney fees as additional alimony is most appropriate where the divorce does not provide the obligee spouse with a source of funds, such as from property division, with which to pay his or her attorney fees. *Yount*, 91 S.W.3d at 783.

The facts of this case support an award of half of Wife's attorney's fees and litigation expenses as alimony in solido, as Wife currently lacks the funds to pay these fees. She is economically disadvantaged compared to Husband, who held a superior earning capacity and did not present credible evidence concerning his income. While Wife was awarded the marital property, she would be required to deplete this asset to pay the entirety of her fees. We find no abuse of discretion under the circumstances presented here.

Lastly, at the conclusion of her brief, Wife seeks to recover her attorney fees incurred on appeal. However, this request was not presented in the statement of issues or supported by argument in Wife's brief. A request for attorney fees is waived if not included in the statement of issues. *See Keeble v. Keeble*, No. E2019-01168-COA-R3-CV, 2020 WL 2897277, at *4 (Tenn. Ct. App. June 3, 2020) (citing *Killingsworth v. Ted Russell Ford*, Inc., 205 S.W.3d 406, 410–11 (Tenn. 2006)). Accordingly, Wife's request for attorney fees on appeal is waived.

## V. CONCLUSION

For the reasons stated above, we affirm the decision of the trial court. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Brent Landon Carter.

_____
JOHN W. MCCLARTY, JUDGE